IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:09-CV-00335-FJG |
| | ) | |
| AXA GLOBAL RISKS (UK) LIMITED and ASSICURAZIONI GENERALI S.p.A., | ) ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 26) and Suggestions in Support (Doc. No. 27), Defendants' Suggestions in Opposition thereto (Doc. No. 35), and Plaintiff's Reply (Doc. No. 43), Defendants' Motion to Dismiss Case, or in the Alternative for Stay of Proceedings (Doc. No. 33) and Suggestions in Support (Doc. No. 34), Plaintiff's Suggestions in Opposition thereto (Doc. No. 39), and Defendant's Reply (Doc. No. 46).

**Background**

This matter centers on a dispute regarding the appropriate choice of law applicable to a contract for reinsurance issued in relation to Plaintiff's ("Continental") insurance of a major building project in Pleasant Hill, Missouri. Although a determination of the law applicable to the contract for reinsurance is not decided here, some background is necessary for a complete understanding of the Court's Order.

The contract at issue is a "Builders Risk and Delay in Start Up Reinsurance Slip No. TD 7113W" (the "Reinsurance Slip"). The Reinsurance Slip was issued to

1

Defendants ("Reinsurers") in relation to a "Global Master Builders Risk Policy No. 2M2 10720658" (the "Policy"), procured by Black & Veatch Corporation ("B&V") from Continental, in connection with the construction of a power plant located in Pleasant Hill, Missouri.  On or about July 21, 2000, B&V suffered a loss for which it sought coverage under the Policy (the "Claim").  Continental denied coverage, and B&V subsequently commenced an action against Continental in the Circuit Court of Johnson County, Missouri for damages and declaratory relief.  On November 21, 2007, a jury entered judgment against Continental for $23,072,979.  Continental appealed.

During the pendency of Continental's appeal, Continental sought reimbursement from Reinsurers for their respective shares of the Claim and expenses.  Reinsurers refused to reimburse Continental based upon Continental's alleged failure to provide timely notice of the Claim pursuant to the terms of the Reinsurance Slip.  On or about March 25, 2009, Reinsurers commenced an action against Continental in the Commercial Court of London, U.K. seeking a declaratory judgment as to the rights and obligations of the parties under the Reinsurance Slip with respect to the Claim. <u>Assicurazioni Generali S.p.A. and AXA Global Risks (UK) Limited v. Continental Casualty Company</u> (the "U.K. Action").

On May 1, 2009, Continental responded by filing a Complaint in this Court seeking monetary damages and declaratory relief in connection with the Reinsurance Slip.  <u>Continental Casualty Company v. AXA Global Risks (UK) Limited and Assicurazioni Generali UK S.p.A</u>, No. 4:09-cv-00335-FJG.  As Continental's appeal of the underlying Claim had not been resolved, and therefore any potential liability on Continental's or Reinsurer's part had not yet been determined, the parties agreed to a

2

stay of proceedings in both this action and the U.K. Action, which stay was granted on June 8, 2009. (Doc. No. 18). Continental's appeal was unsuccessful, and this Court entered a subsequent stay on December 15, 2009 while Continental sought transfer and rehearing with the Missouri Supreme Court.

On March 2, 2010, the Missouri Supreme Court denied Continental's motion for rehearing and transfer, and issued a mandate on March 8, 2010, effectively terminating the stay in this Court. The terms of the stay in the U.K. Action provided that it may be terminated upon the expiration of 28 days written notice from one party to the other. Continental, apprehensive that Reinsurers would seek an ex parte, immediate lift of the stay in the U.K. Action, filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 26) on March 9, 2010. Continental sought to prevent Reinsurers from proceeding with the U.K. Action, or alternatively, from taking any steps in the U.K. Action that might impede or impair the jurisdiction of this Court.

In support of its Motion, Continental alleged that Reinsurer's primary objective in filing the U.K. Action was to preempt this Court's jurisdiction over the dispute. Continental argued that Reinsurers believed there was a strong possibility that Missouri law, which Continental asserts is unfavorable to Reinsurers, would be applied to the Reinsurance Slip if the matter proceeded in this Court. Continental further argued that because Reinsurers believed that English law would be more favorable for their claims, Reinsurers were likely to seek an immediate lift of the U.K. stay and seek an anti-suit injunction from the Commercial Court restraining Continental from pursuing this action. Continental asserted that an anti-suit injunction would effectively "paralyze the jurisdiction" of this Court, and therefore sought to prevent Reinsurers from pursuing

3

such an action through a preliminary injunction, or foreign anti-suit injunction. Continental concluded that Reinsurer's "overarching goal, from the moment that they peremptorily commenced a declaratory judgment action in the U.K. against [Continental], has been to prevent [Continental] from having its claim against Defendants adjudicated by a Missouri Court under Missouri law." (Doc. No. 43 at p. 4)

At a March 10, 2010 conference call with the Court, the parties agreed to an expedited briefing schedule, whereby Reinsurers would respond to Continental's Motion, and Continental would reply.  Further, Reinsurers would file their Motion to Dismiss or Stay the action in this Court, Continental would file suggestions in opposition, and Reinsurers would reply, all on or before March 26, 2010, with a hearing to be held on all of the pleadings March 31, 2010.[1]

**The Foreign Antisuit Injunction Standard Under <u>Goss</u>**

Federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting suits.  <u>Goss International Corp. v. Man Roland Druckmaschinen Aktiengesellschaft</u>, 491 F.3d 355, 359 (8th Cir. 2007).  However, as both parties have noted, the Circuits are split on the level of deference afforded to international comity in determining whether a foreign anti-suit injunction should issue.  Over the years two separate standards have developed ("liberal" and "conservative"). The essential difference between the two is the weight to be accorded to comity - with the

---

[1] Following the March 10, 2010 conference call with the Court, Reinsurers confirmed they would abide by the 28-day notice requirement in the U.K. stay.  Thus, Continental concedes, its request for a temporary restraining order is moot, and Continental now seeks only a preliminary injunction.  In accordance with Reinsurers' notice, the U.K. stay will expire on April 7, 2010.

4

conservative approach according "appreciably greater weight to considerations of international comity." Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren., 361 F.3d 11, 17 (1st Cir. 2004). The Eighth Circuit has adopted the conservative approach:

> Under either the conservative or liberal approach, [w]hen a preliminary injunction takes the form of a foreign antisuit injunction, [courts] are required to balance domestic judicial interests against concerns of international comity. We agree with the observations of the First Circuit that the conservative approach . . . that international comity is a fundamental principle deserving of substantial deference. Likewise, we agree . . . the liberal approach conveys the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility.

Goss, 491 F.3d at 360 (internal quotes omitted). Further, the Goss court, citing the decision in Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 939 (D.C. Cir. 1984), explained that "comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in one action, allowing res judicata to be pled in defense." Goss, 491 F.3d at 366.

Under the conservative approach, a foreign anti-suit injunction will issue only if the movant demonstrates (1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity. Id. at 359. Taking these factors into consideration, this Court reads Goss to hold that the overriding, fundamental question when considering issuance of a foreign anti-suit injunction is: What is the vital American policy being protected by the antisuit injunction?

5

In Goss, the Court repeatedly referenced the importance of showing a threat to a vital American policy before determining that a foreign anti-suit injunction is appropriate. As one of the reasons for vacating the district court's grant of a preliminary injunction in the underlying action, the Goss court noted that the appellant "claims no vital American policy is being protected by the injunction." Goss, 491 F.3d at 362. Examples of "vital American policy" sufficient to warrant issuance of a foreign antisuit injunction are the incompatibility between United States antitrust laws and the British Protection of Trading Interests Act (see Laker, 731 F.2d 909 (D.C. Cir. 1984)); the public policy of protecting investors against securities fraud (see Quaak 361 F.3d 11 (1st Cir. 2004)); and the "diametrically opposed antitrust policies of the United States and [Japan]" (see Goss at 367.

Here, Continental urges the Court to set aside concerns of comity and enter a foreign antisuit injunction based upon Reinsurers' allegedly preemptive strike seeking to paralyze the jurisdiction of this Court. However, Continental has not demonstrated any vital American interest at stake sufficient to meet the Goss standard. Although this Court, like the Goss court, realizes that refusing to grant the requested relief is objectionable to Continental, it does not threaten United States jurisdiction or any current United States policy. Moreover, "[i]n parallel litigation, the issue of comity is an important and omnipresent factor. Although it is a consideration in federal and state litigation, it assumes even more significance in international proceedings." General Electric Co. v. Deutz AG, 270 F.3d 144, 159-60 (3rd Cir. 2001). Comity has been described as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to

international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." Id., citing Hilton v. Guyol, 159 U.S. 113, 164 (1895).

This case, based upon a question of contract law, simply does not rise to the level of a "vital American interest" sufficient to outweigh concerns of international comity. "The possibility a foreign court's holding might threaten the United States plaintiff's interest in prosecuting its lawsuit is not a threat to the jurisdiction of the United States courts." Goss, 491 F.3d at 367 (citing Gau Shan Co. v. Bankers Trust Co., 956 F.2d 1349, 1356 (6th Cir. 1992).

Based on the reasoning above, and having considered the parties' arguments, Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction (Doc. No. 26) is hereby DENIED.

**Appropriateness of Concurrent International Jurisdiction**

Reinsurers devote considerable effort to arguing that because they were first to file, Continental's case should be dismissed, or alternatively, stayed pending a ruling by the London Commercial Court on jurisdictional issues. However, as noted by Continental, the first-filed "rule" is simply a domestic prescription for managing concurrent jurisdiction between two federal district courts. As the Eighth Circuit has held, "'first filed' is not a 'rule.' It is a factor that typically determines, in the absence of compelling circumstances, which of two concurrent federal court actions should proceed to judgment." Smart v. Sunshine Potato Flakes L.L.C., 307 F.3d 684, 687 (8th Cir. 2002). District courts in this Circuit have routinely held that the "first-filed" analysis does

not apply to "proceedings before two different sovereignties." Leomporra v. Jet Linx Aviation, Inc., 2009 U.S. Dist. LEXIS 45602, *6 n.2 (D. Minn. June 1, 2009).

While the Court appreciates Reinsurers' point that some courts have considered the first-to-file as a factor in addressing concurrent international jurisdiction, the Court notes that Defendant's support rested on slightly different principles of international abstention. Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512 (11th Cir. 1994). Moreover, Turner is distinguishable in that it dealt with the Court's decision to stay the litigation in the United States district court in deference to the German forum, *which had already rendered a judgment on the merits.* Id. at 1523 (emphasis added). The Court notes that in the instant case, no judgment has been rendered, either in this Court or the Commercial Court.

Finally, with respect to Reinsurers' argument for dismissal or stay based on the first-filed analysis, the Court finds the reasoning of American Cyanamid persuasive:

> [D]fendants' argument is similar to one examined and rejected by the United States District Court for the District of Delaware in Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke, 734 F.Supp. 142 (D.Del.1990). In the course of declining to dismiss the action pending before it in favor of a first-filed action pending in The Netherlands, the Court noted: The "comity" argument could also be interpreted as urging the application of a "first-filed rule." However, "[t]he rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty." Compagnie Des Bauxites De Guinea v. Insurance Co. of North America, 651 F.2d 877, 887
> n. 10 (3rd Cir.1981).... When related cases are before two different sovereigns, the appropriate procedure is to permit both jurisdictions to proceed, with any decision of one becoming res judicata on the other . . . .

American Cyanamid Co. v. Picaso Anstalt and Pierre Cardin, 741 F. Supp. 1150, 1159 (D.N.J. 1990) (additional citations omitted).

**Conclusion**

After careful consideration of the pleadings and arguments asserted at the March 31, 2010 hearing, the Court holds that Defendants' Motion to Dismiss Case, or in the Alternative for Stay of Proceedings (Doc. No. 33) is hereby DENIED. Further, as stated above, Plaintiff's Motion for Preliminary Injunction is hereby DENIED.

IT IS SO ORDERED.

                                            /s/Fernando J. Gaitan, Jr.
                                            Chief United States District Judge

Dated: 04/02/10
Kansas City, Missouri